IN RE GUARDIANSHIP OF GARDNER, Incompetent: STATE BOARD OF CONTROL, Respondent, vs. ESTATE OF GARDNER and another, Appellants.

*December 5, 1935—March 3, 1936.*

For the appellants there was a brief by *Ramsdell, King & Linderman* of Eau Claire, and oral argument by *Bailey E. Ramsdell.*

For the respondent State Board of Control there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Blaine M. Linke,* collection and deportation counsel for the State Board of Control, and *Paul B. Knuese,* assistant collection and deportation counsel, and oral argument by *Mr. Linke* and *Mr. Knuese.*

For the "claimant" Clara Gardner Wilson there was a brief by *Arthur Goldblatt* of Chicago, Illinois.

The following opinion was filed January 7, 1936:

FOWLER, J.   The county court of Eau Claire county appointed a guardian for Sylvester M. Gardner, a World War

veteran, on the ground that he was an insane person. The State Board of Control, pursuant to sec. 49.10, Stats., filed a claim in the guardianship proceedings for the cost of maintaining the veteran in the hospital for the criminal insane since his transfer thereto by the board upon its finding that he was insane. The court allowed the claim at the amount of $3,234.56. The appellants contend that the veteran was kept in the hospital pursuant to his sentence upon conviction of a criminal offense and no claim lies against his estate for his maintenance while so confined.

The veteran was sentenced to the state prison upon conviction for statutory rape on July 20, 1925, for a term of ten years. On April 25, 1927, the state board, sitting as a lunacy commission under sec. 51.22, Stats., found the veteran insane and ordered his transfer to the central hospital for the insane pursuant to their finding and said statute. He entered the hospital on May 2, 1927, and the claim for maintenance dates from the time of his such entrance, and is based wholly upon his such confinement during the term of his sentence.

That the estate of a person held for trial on a criminal charge committed before trial pursuant to sec. 357.13, Stats., to the central hospital for the insane, by a court upon a finding by the court of his insanity, is liable under sec. 49.10, Stats., for his support while so confined in said hospital pursuant to such commitment, was held in *Guardianship of Sprain,* 219 Wis. 591, 263 N. W. 648. But in that case it was also held that the estate of the incompetent was not liable under sec. 49.10 for his support while he was confined in such hospital for observation pursuant to sec. 357.12 (3), Stats., prior to the finding of insanity by the court. It was considered that up to the time the defendant was adjudged insane by the court he was held upon the warrant for his arrest and his commitment to await trial, and that liability for his support while he was so held did not exist in absence

of a statute expressly creating such liability. This ruling was based upon the general rule stated in 50 C. J. p. 367, § 112, that the estate of a prisoner is not liable for his support while in prison under a sentence of a court upon conviction of crime in absence of a statute imposing such liability.

Only two cases are cited in support of the rule stated in the text above referred to, *Washburn v. Belknap,* 3 Conn. 502, and *Gehrett v. Estate of Ferguson,* 83 Ind. App. 717, 149 N. E. 86. Neither of these directly supports the proposition to which it is cited in the text, the one by reason of the statute and nature of the imprisonment involved, and the other for the reason that the state was not a party to the action, but a sheriff was seeking to recover for especial care furnished an insane person placed in his custody at the request of his children and the guardian of his person. That there are no cases bearing directly upon the proposition of the text is quite persuasive that it has never occurred to anyone that a prisoner or his estate is liable for his support while in prison, in the absence of a statute making him so liable, and the proposition from the nature of it seems self-sustaining.

The question for determination therefore is whether the confinement of the appellant's ward in the central hospital is properly referable to his sentence to the state prison. If he was there confined pursuant to such sentence, there can be no recovery.

We are of opinion that the confinement must be referred to his sentence; that he must be held to have been confined pursuant to his sentence. This conclusion receives some support from the provision of sec. 51.22, Stats., that, if a prisoner transferred to the central hospital upon a finding of insanity by the Board of Control recovers before his sentence expires, he shall be returned to the prison from which he was transferred. This implies that the term of his sen-

tence has been running during the time of his detention in the central hospital. Thus he is serving his sentence while in the hospital the same as if he were confined in the prison itself. The central hospital, moreover, is a mere adjunct to or department of the state prison, in which only persons sentenced for crime, held upon charge of crime, or found not guilty of crime because of insanity are confined. But for his sentence the ward would never have been placed in the central hospital at all. His sentence was the first step in the procedure resulting finally in his confinement in the central hospital. It is therefore the basis of his such confinement, the source of the authority therefor.

It follows that the county court was in error in allowing the claim of the State Board of Control.

*By the Court.*—The judgment of the county court is reversed, and the record is remanded with directions to dismiss or disallow the claim.

A motion for a rehearing was denied, without costs, on March 3, 1936.