

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

June 9, 1950

Hon. Gene Maddin
District Attorney
McLennan County
Waco, Texas

Dear Sir:

Opinion No. V-1071.

Re: Types of proceedings
subject to the County
Library fee assessed
in civil cases.

Your request for an opinion is as follows:

"The County Commissioners of McLennan County passed an act authorizing the County Clerk and the District Clerk of said County to assess the extra fee of $1.00 on each civil case filed in said courts, with the exception of tax suits. This fee is to be put into a fund to establish and maintain a County Library. Are such actions as guardianship, probate proceeding, insanity, restoration and Habeas Corpus 'Civil cases' as should come under said act?"

Since McLennan County has a population of 101-898 inhabitants and the Court of Civil Appeals of the Tenth Supreme Judicial District is located in Waco, the provisions of Article 1702e of Vernon's Civil Statutes are applicable to McLennan County.

Article 1702e, V.C.S., provides:

"Section 1. The Commissioners Courts of all counties within this State having a population of not less than thirty thousand (30,000) inhabitants nor more than two hundred and fifty thousand (250,000) inhabitants, according to the last preceding or any future Federal Census, and in which there is located a Court of Civil Appeals, shall have the power and authority, by first entering an order for that purpose, to provide for, maintain and establish a County Law Library.

"Sec. 2. For the purpose of establishing County Law Libraries after the entry of such order, there shall be taxed, collected,

and paid as other costs, the sum of One Dollar ($1) in each civil case, except suits for delinquent taxes, hereafter filed in every county or district court; provided, however, that in no event shall the county be liable for said costs in any case. Such costs shall be collected by the clerks of the respective courts in said counties and paid by said clerks to the County Treasurer to be kept by said Treasurer in a separate fund to be known as the 'County Law Library Fund.' Such Fund shall be administered by said Courts for the purchase and maintenance of a Law Library in a convenient and accessible place, and said Fund shall not be used for any other purpose.

"Sec. 3. Said Courts are granted all necessary power and authority to make this Act effective, to make reasonable rules in regard to said Library and the use of the books thereof, and to carry out the terms and provisions of this Act."

In accordance with Article 1702e the Commissioners' Court of McLennan County, under the facts submitted, has entered an order providing for a fee of One Dollar ($1.00) tax as costs in each civil case filed in the county or district court except tax suits to be put into a fund for the purpose of establishing a County Law Library.

A "case," as defined in Slaven v. Wheeler, 58 Tex. 23, 25 (1882), is "a contested question before a court of justice" or, as defined in Ex parte Towles, 48 Tex. 413, 433 (1877), "a question contested before a court of justice; an action or suit in law or equity." A "criminal" case as distinguished from a "civil" case is defined in Scott v. State, 86 Tex. 321, 24 S.W. 789 (1894) to be "an action, suit or cause instituted to secure conviction and punishment for crime." A "civil" action is defined in Lane v. Hewgley, 155 S.W. 348, 350 (Tex.Civ.App.1913) to be "a proceeding in a court of justice by one party against another for the enforcement or protection of a private right or for the redress or prevention of a private wrong."

With the above general distinctions between civil and criminal cases in mind, we shall consider each of the specific types of proceedings mentioned in your request.

1. Guardianship and other cases in the
   Probate Court:

It was held in Attorney General's Opinion No.
0-3957, dated October 7, 1941, that probate matters are
among the cases in which House Bill 1080 of the 47th Leg-
islature (Art. 1702d, V.C.S.) directs that the sum of One
Dollar ($1.00) shall be taxed as costs for the purpose of
establishing and maintaining a County Law Library. We
quote the following from said opinion:

"And the Legislature of Texas seems also
to have considered probate matters as 'civil
cases'. Witness the language used in Article
1821, Revised Civil Statutes of 1925:

"'The judgments of the Courts of Civil
Appeals shall be conclusive on the law and
facts, nor shall a writ of error be allowed
thereto from the Supreme Court in the follow-
ing cases, to wit:

"'(1) Any civil case appealed from the
county court or from a district court, when,
under the Constitution, a county court would
have had original or appellate jurisdiction
to try it, except in probate matters . . .'
(Underlining ours)

"Also, the language used in Article 3702,
relating to appeals of probate matters to the
district court:

"'Such cases shall be tried de novo in
the district court, and shall be governed by
the same rules of procedure as other civil
cases in said court.' (Underscoring ours)

"When such a meaning is ascribed to the
word 'case' as used in House Bill No. 1080,
probate proceedings, whether contested or not,
fall within its terms. And we believe such a
construction is within the apparent intent of
the Legislature in enacting it.

"You are therefore respectfully advised
that it is our opinion that probate matters
are among the cases in which House Bill No.

1080 directs that the sum of One Dollar ($1.-00) shall be taxed as costs for the purpose of establishing and maintaining a County Law Library (assuming, of course, that the Commissioners' Court has first entered its order for that purpose.)"

We point out, however, that not all proceedings in the Probate Court are classified as a "civil case" within the meaning of Article 1702e. We quote the following from Attorney General's Opinion No. V-292:

"It is recognized that certain proceedings in the Probate Court could be classified as a 'civil case'. Nevertheless, an application filed in the Probate Court for a delayed birth certificate is not a 'civil case' within the meaning of Art. 1702a-1, V.C.S., filed in County or District Court; therefore applicants for delayed birth certificates may not be taxed the $1.00 fee for filing."

2. Insanity and Restoration Proceedings: White v. White, 108 Tex. 570, 196 S.W. 508 (1917) holds that proceedings to determine insanity are of a civil nature rather than criminal. We quote the following:

"Proceedings under said act of 1913 are of a civil, and not of a criminal, nature. Insanity is not a crime; in contradistinction it is a disease. . ."

See also Ex parte Singleton, 72 Tex.Crim. 122, 161 S.W. 123 (1913).

It was held in Attorney General's Opinions Nos. 0-259, dated February 28, 1939 and 0-3952, dated March 11, 1943, that lunacy or insanity proceedings are civil cases.

In view of the foregoing it is our opinion that insanity proceedings are civil cases within the meaning of Article 1702e.

In People v. Cornelius, 302 Ill. 599, 65 N.E. 2d 439 (Ill. S.Ct. 1946) it was held that a proceeding under the Criminal Code to determine whether a person charged with a crime is a "civil proceeding." It was pointed out, however, that such a proceeding "is not an action at law or in equity but was wholly preliminary to trial on the indictment." Therefore, where insanity is

interposed as a defense in a criminal case under the provisions of Article 932a, V.C.C.P., although the hearing on the question of insanity may be a civil proceeding, such a plea would not constitute a civil case within the meaning of Article 1702e.

In Ex parte Frailey, 146 Tex.Crim. 557, 177 S. W.2d 72 (1944), it was held that restoration proceedings of a person not charged with a criminal offense under the provisions of Article 5561a, V.C.S., is a civil matter. It is therefore our opinion that all restoration proceedings held under the provisions of Article 5561a are civil cases. Likewise, it is our opinion that restoration proceedings under Article 932a, V.C.C.P., are civil cases for such restoration proceedings are not actions, suits or other causes instituted to secure conviction and punishment for crime. On the contrary, such trials are cases involving solely the question of sanity, wholly independent from any criminal case awaiting trial when the defendant is adjudged sane. Ex parte Frailey, supra.

3. Habeas Corpus: In determining whether habeas corpus cases are regarded as civil or criminal remedies, it was held in Harbison v. McMurray, 138 Tex. 192, 158 S. W.2d 284, 287 (1942):

"Since habeas corpus cases or proceedings are regarded as civil, as distinguished from criminal remedies or proceedings, in those jurisdictions which do not divide the jurisdiction of their appellate courts, as regard criminal and civil cases, we think that in this State, where such division is made, appeals in habeas corpus cases or proceedings growing out of civil proceedings or cases should be classified as 'civil cases' within the meaning of Section 6 of Article V of our State Constitution and Article 2249 of our civil statutes."

In Ex parte Green, 116 Tex. 515, 295 S.W. 910 (1927), it was held that a judgment punishing one for contempt of court for violating an injunction issued under an Act prohibiting the sale of intoxicating liquors was rendered in a civil case rather than a criminal case within the meaning of Article 1737, V.C.S., granting the Supreme Court the power to issue writs of habeas corpus in civil cases. We quote the following:

"After the pardon proclamation was issued, relator sought his discharge from the district court on habeas corpus. Upon his discharge being refused by the district court, relator appealed to the Court of Criminal Appeals. The appeal was dismissed in an opinion by Presiding Judge Morrow, in which it was said:

"'As applied to the present instance in which the appellant seeks relief from the judgment of contempt entered against him in a civil case, we are of the opinion that he should invoke the jurisdiction of the Supreme Court to give him any relief to which he is entitled before asking this court to discharge him.' Ex parte Green, 100 Tex.Cr. R. 182, 272 S.W. 162.

"In holding that the judgment punishing relator for contempt was rendered in a civil suit and not in a criminal case, the Court of Criminal Appeals adhered to a long line of authorities. Ex parte Zuccaro, 72 Tex. Cr. R. 214, 162 S.W. 844, was a case where the act enjoined was, as here, a violation of the Penal Code. When Zuccaro applied to the Court of Criminal Appeals for release from a judgment imposing on him both a fine and imprisonment for contempt in doing the act forbidden by the injunction, the court denied him relief on the ground:

"'That the case in which this punishment in contempt was imposed is a civil case, we have no doubt. Any judgment which would have been rendered by the district court of Tarrant County in said cause could only have been appealed, and by either party, to the civil courts of this state, and it could not have been appealed to this court. * * * While the violation of said article of the Code is a criminal offense, said suit is a civil case, and applicant is held by the sheriff by virtue of process and commitment and order on account of the violation of an order of the said district judge and court, in the very terms of said statute.'"

The test to determine whether a particular habeas corpus proceeding is a civil case or a criminal case is aptly stated in State v. Morris, 208 S.W.2d 701 (Tex.Civ.App.1948) as follows:

> "The appellate jurisdiction of this court extends only to civil cases. Art. V, Sec. 6, Const.of Tex., Vernon's Ann.St.Art. 1819, Vernon's Tex.Civ.Stats. In order to determine whether a proceeding by habeas corpus to remove an unlawful restraint is to be regarded as a criminal or a civil case for jurisdictional purposes it is necessary to look to the cause of the restraint. If the restraint is by reason of a violation or a supposed violation of some criminal or quasi criminal law the proceeding will ordinarily be regarded as a criminal case; but if the restraint is not because of some supposed violation of criminal law, then the proceeding must be classed as a civil case."

In view of the foregoing you are advised that habeas corpus proceedings may be either a civil case or a criminal case within the meaning of Article 1702e, V. C S., depending on the facts in each instant case. If in the proceeding it appears that "the restraint is not because of some supposed violation of criminal law, then the proceeding must be classed as a civil case." State v. Morris, supra; Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894).

You have asked no opinion regarding the constitutionality of Article 1702e and we express no opinion in that regard.

## SUMMARY

Guardianships and other cases in probate court, insanity, and restoration proceedings are civil cases within the meaning of Article 1702e, V.C.S. Scott v. State, 86 Tex. 321, 24 S.W. 789 (1894); White v. White, 108 Tex. 570, 196 S.W. 508 (1917); Ex parte Frailey, 146 Tex.Crim. 557, 177 S.W.2d 72 (1944); Lane v. Hewgley, 155 S.W. 348 (Tex.Civ.App. 1913); A.G.Opinions Nos. 0-259, 0-3952, 0-3957, V-292.

A habeas corpus proceeding may be
either a criminal case or a civil case de-
pending on the facts in each instance.  If
in the proceeding it appears that the re-
straint is not because of some supposed
violation of criminal law, then the pro-
ceeding must be classed as a civil case.
Legate v. Legate, 87 Tex. 248, 28 S.W. 281
(1894); Harbison v. McMurray, 138 Tex. 192,
158 S.W.2d 284 (1942); Ex parte Green, 116
Tex. 515, 295 S.W. 910 (1927); State v.
Morris, 208 S.W.2d 701 (Tex.Civ.App.1948).

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

J. C. Davis, Jr.
County Affairs Division

Joe R. Greenhill
First Assistant

By   John Reeves
     John Reeves
     Assistant

JR:mw